JAVIER ZEQUEIRA, demandante y apelado, *v.* LA UNIVERSIDAD DE PUERTO RICO, demandada; RAFAEL DE J. CORDERO, AUDITOR DE PUERTO RICO, interventor y apelante.

Número 10968.

*Sometido:* 8 de marzo de 1954. *Resuelto:* 13 de abril de 1954.

*Hon. Secretario de Justicia José Trías Monge* y *Edgar S. Belaval, Procurador Auxiliar,* abogados del apelante; *Rafael Pastor* y *Horacio Franceschi,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

Durante el año 1947 el ingeniero-contratista Javier Zequeira formalizó varios contratos con la Universidad de Puerto Rico para la construcción de la Escuela de Artes Industriales, cuyas obras realizó el indicado contratista conforme a lo convenido. Al formalizarse estos contratos, el ingeniero Zequeira, contrario a la costumbre seguida por todo ingeniero-contratista, no incluyó en los estimados que sirvieron de base a las cotizaciones que hizo y que fueron aceptadas por la Universidad para la realización de dichas obras, los arbitrios que por concepto de los ameritados contratos venía obligado a pagar conforme lo disponía la sección 16, párrafo 4, de la Ley de Rentas Internas de Puerto Rico, así como tampoco la contribución del 1/1000 del montante de los contratos que ingresa en los fondos del Colegio de Ingenieros de Puerto Rico. Esto se debió a que la Universidad sostenía que siendo ella una corporación pública, el contratista no venía obligado a pagar esos arbitrios. Sin embargo, los contratos se firmaron bajo el entendido de que en el evento de que el contratista tuviera que pagar dichas contribuciones, la Universidad absorbería el peso de las mismas. El contratista dió comienzo a las obras continuando su desarrollo hasta que a principios de diciembre de 1947 la Universidad le informó que el Auditor de Puerto Rico se negaba a autorizarle pagos en consideración al trabajo realizado hasta entonces, mientras no pagara

los arbitrios y contribuciones a que antes se han hecho referencia. Previa notificación a la Universidad, el contratista paralizó las obras y se dispuso a recurrir a los tribunales a menos que se resolviera que no había que pagar las contribuciones o que de pagarse éstas por él, se reconociera, en tal caso, la validez del entendido, respecto al pago de dichas contribuciones, a que habían quedado sujetos los contratos. El Consejo Superior de Enseñanza fué convocado a una reunión en Fortaleza con el entonces Gobernador de Puerto Rico, y con asistencia del Auditor, Rafael de J. Cordero. Prevaleció en dicha reunión el criterio de que el contratista venía obligado al pago de las contribuciones antes dichas, según alegaba el Auditor. Sin embargo, en esa misma reunión la Universidad de Puerto Rico, a través de su Rector y otros miembros del Consejo Superior de Enseñanza reconoció y ratificó una vez más que ella venía obligada a absorber el peso de dichas contribuciones y al efecto convinieron en que el contratista pagaría las contribuciones y luego su importe le sería reembolsado por la Universidad. En consideración a este compromiso el contratista pagó en enero de 1948, la cantidad de $17,150.16 por concepto de tales contribuciones y continuó el cumplimiento de los contratos. En octubre del mismo año, la Universidad le envió al Auditor de Puerto Rico el *"voucher"* número 2990 por la cantidad de $17,150.16 cubriendo el reembolso antes referido pero dicho funcionario se negó a impartirle su aprobación, tanto en esa ocasión como en ocasiones posteriores. Finalmente, en apelación, el Gobernador de Puerto Rico sostuvo la decisión del Auditor. La Universidad ha reconocido siempre, a través de actos oficiales y expresos, el derecho del contratista a recobrar los $17,150.16 como una cuestión contractual pero el Auditor de Puerto Rico se negó siempre a darle curso a los correspondientes comprobantes de pago.

En junio de 1951 el contratista Zequeira inició una acción ante el Tribunal de Distrito de Puerto Rico, Sección de San

Juan, contra la Universidad de Puerto Rico, en cobro de la ameritada suma de $17,150.16. Rafael de J. Cordero, en su carácter de Auditor de Puerto Rico, solicitó y obtuvo intervención en dicha acción, como demandado. Tanto la Universidad como el Auditor contestaron aceptando las alegaciones esenciales de una demanda enmendada en la cual se exponen sustancialmente los hechos que dejamos relatados. Como defensa el interventor alegó que el convenio celebrado entre la Universidad y el demandante, obligándose aquélla a absorber el peso de las contribuciones que debía éste pagar, carece de efecto o valor legal alguno; que la demanda no aduce hechos constitutivos de causa de acción; que la corte carece de jurisdicción, y que de tener razón el demandante, éste viene obligado a pagar el arbitrio sobre el montante de dichos arbitrios ya que dicha suma será parte del montante del contrato.

Previa solicitud al efecto, la corte a quo dictó sentencia por las alegaciones a favor del demandante y condenó a la Universidad de Puerto Rico a pagarle la suma reclamada más $2,000 para honorarios de abogado y las costas. Esta sentencia fué dictada el día 18 de febrero de 1953 y notificada a las partes el día 26 del mismo mes y año. En 30 de marzo de 1953, el interventor apeló de dicha sentencia para ante este Tribunal. La Universidad de Puerto Rico no ha apelado.

El demandante-apelado presentó ante este Tribunal una moción solicitando la desestimación de la apelación interpuesta por el interventor. Declaramos sin lugar dicha moción sin perjuicio de que la misma se reprodujera al someterse el caso en los méritos. Así lo ha hecho el demandante-apelado, y como en dicha moción se ataca la jurisdicción de este Tribunal para conocer del recurso, procede disponer previamente de ella.

El demandante-apelado basa su moción de desestimación en la nulidad del escrito de apelación. Arguye que el compareciente en dicho escrito, Rafael de J. Cordero, en su carácter de Auditor de Puerto Rico y como interventor, no era la parte

o funcionario con derecho a interponer el recurso de apelación. A nuestro juicio tiene razón. Veamos.

Para la fecha del inicio de este pleito, Rafael de J. Cordero desempeñaba el cargo de Auditor de Puerto Rico provisto por el extinto Artículo 20 de nuestra anterior Carta Orgánica (Ley Jones). Entre las facultades del Auditor estaban la de examinar, ajustar, decidir, fiscalizar y liquidar todas las cuentas y reclamaciones pertenecientes a las rentas e ingresos de cualesquiera fuentes del Gobierno de Puerto Rico, y la de examinar, fiscalizar, y liquidar de acuerdo con la ley y los reglamentos administrativos, todos los gastos de fondos y de propiedad perteneciente al Gobierno de Puerto Rico o a cualesquiera de sus ramas. Además era su deber llamar la atención de los debidos funcionarios administrativos hacia aquellos gastos que a su juicio fueran extravagantes, excesivos, innecesarios o irregulares. Su jurisdicción sobre las cuentas y sobre todos los comprobantes o expedientes correspondientes a las mismas, era exclusiva. Artículo 20, anterior Ley Jones. Amparándose en estas disposiciones legales Cordero solicitó y obtuvo intervención en este pleito, porque según alegaba, "en su carácter de Auditor de Puerto Rico, es el llamado a velar porque los desembolsos de fondos de El Pueblo de Puerto Rico se hagan ajustándose a los estrictos términos de la ley:"

Ahora bien, la sentencia en este caso fué dictada por la corte a quo el día 18 de febrero de 1953 y notificada a las partes el día 26 del mismo mes y año. En 30 de marzo de 1953, el interventor, Auditor de Puerto Rico, archivó su escrito de apelación. Para esta fecha ya el cargo de Auditor de Puerto Rico había sido abolido y el interventor señor Cordero había cesado como tal funcionario y se había convertido por nombramiento en Contralor de Puerto Rico. Este nuevo cargo fué creado por el Artículo III, Sección 22 de la Constitución del Estado Libre Asociado de Puerto Rico, en vigor desde julio 25 de 1952. Dicha Constitución creó también en

su Artículo IV, Sección 6, el cargo de Secretario de Hacienda. Las funciones del antiguo Auditor fueron fraccionadas en dos partes. Una de dichas partes se encomendó al Contralor.y la otra al Secretario de Hacienda. "El Contralor—dispone la Constitución—fiscalizará todos los ingresos, cuentas y desembolsos del Estado, de sus agencias e instrumentalidades y de los municipios, para determinar si se han hecho de acuerdo con la ley." Artículo III, Sección 22 de la Constitución y Ley núm. 9 de 24 de julio de 1952 ((2) pág. 17). De suerte que la misión fiscalizadora del Contralor comienza después que los ingresos, cuentas y desembolsos han sido hechos. En cambio las funciones referentes a la pre-intervención, examen y supervisión de los ingresos y gastos públicos, que antiguamente desempeñaba el Auditor de Puerto Rico, pasaron al Secretario de Hacienda. Ley núm. 10 de 24 de julio de 1952 ((2) pág. 23). Es evidente, por tanto, que el Contralor no puede intervenir en las funciones que la ley ha asignado al Secretario de Hacienda, ni puede tener interés alguno en las mismas. Siendo ello así, para la fecha del archivo del escrito de apelación, carecía el Contralor de interés alguno en el litigio. Correspondía más bien al Secretario de Hacienda hacer la decisión respecto a si el fallo del tribunal a quo debía ser acatado o apelado. De decidirse por esto último, debió obtener oportunamente, esto es, antes de que venciera el término para apelar,(¹) la correspondiente sustitución de partes a tenor con lo dispuesto en la Regla 25(d) de las de Enjuiciamiento Civil.(²)

---

(¹) No se trata aquí de una apelación interpuesta por un funcionario con interés en la misma, que luego cesa o sus funciones son transferidas a otro. En tal caso procedería la sustitución. Véase la Regla 17 de nuestro Reglamento y *Stitzel-Weller Distillery* v. *Wickard*, 118 F.2d 19.

(²) Dicha Regla dispone:

"(d) *Funcionarios Públicos; Muerte o Separación del Cargo.*—Cuando un funcionario público de cualquier agencia gubernativa fuese parte en una acción y mientras estuviere pendiente falleciere, renunciare o de cualquier otro modo cesare en el desempeño de su cargo, la acción podrá continuarse por o contra su sucesor."

En apoyo de su contención el demandante-apelado cita el caso de *Davis* v. *Preston*, 280 U. S. 406, 74 L. ed. 514.(³)

Extractamos de dicho caso:

"Dentro de los tres meses señalados Davis, que se describía a sí mismo como Agente Federal, y la compañía aseguradora, solicitaron de este Tribunal la revisión por certiorari, y su petición fué concedida.

"Aparece ahora que al presentarse la petición Davis había dejado de ser Agente Federal y había sido sustituído en el cargo por Andrew W. Mellon, de ese modo haciendo la sentencia no ejecutable contra Davis y posible de ser satisfecha tan sólo después de la sustitución de su sucesor Mellon. Por consiguiente, Davis no estaba entonces en posición para quejarse de la sentencia o para invocar su revisión por este Tribunal. Todo derecho y discreción para hacer cualquiera de las dos cosas había pasado a su sucesor en el cargo. *Florida ex re. Wailes* v. *Croom*, 226 U. S. 309; *Taylor* v. *Savage*, 1 How. 282; *Dolan* v. *Jennings*, 139 U. S. 385, 387; *McClane* v. *Boon*, 6 Wall. 244.

"De lo que se colige que la petición de Davis fué impróvidamente concedida y debe ser denegada. El hecho de que la com-

---

(³) Las disposiciones pertinentes de la Ley de Transportación de 1920, según fué enmendada en 1933, a que se refiere ese caso disponen lo siguiente:

"(*h*) Las acciones, los pleitos, procedimientos y las reclamaciones de compensación, de la índole descrita en los incisos (*a*), (*c*), o (*d*), debidamente comenzados dentro del período de limitación prescrito, y pendientes a la fecha en que este inciso entre en vigor, no quedarán abolidos por razón del fallecimiento, expiración del término del cargo, retiro, renuncia o remoción del cargo del Director General de Ferrocarriles o del agente designado bajo el inciso (*a*), mas (no obstante las disposiciones de la Ley titulada 'Ley para Impedir la Abolición de ciertas acciones', aprobada el 8 de febrero de 1899), se podrán seguir tramitando hasta sentencia, decreto o adjudicación final sustituyendo al agente designado por el Presidente que entonces estuviere en el cargo, en cualquier tiempo antes de que se satisfagan tal sentencia, decreto o adjudicación final. Tampoco ninguna acción, pleito u otro procedimiento hasta ahora instado o que en lo sucesivo se instare por cualquier funcionario u oficial públicos, en su capacidad oficial, para hacer efectivo el, o compeler al, cumplimiento de una obligación que surgida fuera del control Federal se adeude a o devengue por los Estados Unidos quedará abolido por razón del fallecimiento, renuncia, retiro o remoción del cargo de tal funcionario u oficial, sino que tal acción, pleito u otro procedimiento podrá (no obstante las disposiciones de dicha ley de 8 de febrero de 1899) seguirse tramitando hasta sentencia, decreto o adjudicación final, sustituyendo al sucesor en el cargo, en cualquier tiempo antes de que se satisfaga cualquiera de tales sentencia, decreto o adjudicación final."

pañía aseguradora se uniera en la petición no puede alterar el resultado. Aun cuando a la compañía se le declaró responsable en costas en las dos cortes de apelaciones, ese aspecto de la sentencia confirmatoria no es motivo de queja alguna. Tampoco ello permite a la compañía a quejarse de la sentencia en otros particulares. *Smith* v. *Indiana,* 191 U. S. 138, 149–150.

"Se presenta ahora un moción por Andrew W. Mellon, como Agente Federal, para que se sustituya a Davis por él en estos procedimientos. Pero la moción deberá denegarse. La sucesión en el cargo, según aparece ahora, ocurrió antes de que se hiciera esfuerzo alguno para obtener una revisión en este Tribunal. Luego de haber sido sustituído en el cargo, Davis estaba completamente separado del mismo y sin derecho alguno a invocar tal revisión o para ejercer autoridad o discreción alguna a ese respecto. Por tanto, su petición no debe ser considerada. El término dentro del cual tal revisión puede ser invocada está limitado por estatuto y tal término ha expirado con creces. El conceder la moción en estas circunstancias sería soslayar el estatuto de limitación y sujetar a la parte victoriosa en las cortes del Estado a incertidumbres y molestias que la limitación se propone impedir.

"Los preceptos referentes a sustitución que se adicionaron a la sección 206 de la Ley de Transportación de 1920 por la Ley de 3 de marzo de 1923, c. 233, 42 Stat. 1443, se citan en apoyo de la moción. Pero aun cuando se les interprete liberalmente, como probablemente deben serlo, no revelan el propósito bien (*a*) de permitir a un anterior Agente Federal invocar la revisión por este Tribunal de una sentencia que no le concierne legalmente a él, o ya (*b*) de modificar o ampliar el término prescriptivo estatutario para invocar el poder de revisión de este Tribunal."

Véase al mismo efecto, *Nudelman* v. *Globe Varnish Co.,* 312 U. S. 690, 95 L. ed. 1126.

El interventor-apelado arguye que el caso de *Davis* v. *Preston,* supra, no es de aplicación al de autos porque en dicho caso el funcionario que apeló ya había cesado totalmente como funcionario público, mientras que aquí Cordero ha continuado como funcionario público. No estamos conformes. Ya hemos visto que si bien Cordero desempeña y desempeñaba el cargo de Contralor para la fecha en que interpuso este recurso

de apelación, las facultades, deberes y atribuciones que como Auditor de Puerto Rico le dieron base para intervenir en el litigio, fueron transferidas al Secretario de Hacienda.([4]) Por lo tanto, aunque Cordero continúa siendo un funcionario público, carece de interés en este litigio, al igual que cualquier otro funcionario público, que no sea el Secretario de Hacienda. Siendo ello así, es de aplicación el principio sostenido en el caso de *Davis*, y *debemos, en su consecuencia, declarar con lugar la moción del demandante-apelado y desestimar el recurso por falta de jurisdicción.*

El Juez Asociado Sr. Belaval no intervino.

---

([1]) No estamos resolviendo ahora que el Auditor de Puerto Rico tenía derecho a intervenir en esta acción. Así lo hemos presumido en vista de que esta cuestión no ha sido suscitada por el demandante-apelado.