ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| LJUBINKA MARKOVIC<br><br>Apelada<br><br>v.<br><br>JOHN J. MELDON Y DIANA B. FITZGERALD<br><br>Apelantes | KLAN202400092 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2021CV02878<br><br>Sobre: Desahucio, Cobro de Dinero |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de noviembre de 2025.

Comparece John J. Meldon y Diana B. FitzGerald (en adelante, parte apelante) para solicitarnos la revisión de la *Sentencia Parcial* emitida el 28 de diciembre de 2023, notificada el 2 de enero de 2024. Mediante la *Sentencia Parcial* apelada, el foro primario declaró *Ha Lugar* una solicitud de sentencia sumaria presentada por Ljubinka Markovic (en adelante apelada) y *No Ha Lugar* una solicitud de sentencia sumaria presentada por la parte apelante. Además, dispuso que una vez adviniera final y firme la *Sentencia Parcial*, procedería a calendarizar una vista para disponer sobre la controversia de alegados daños sufridos por la parte apelada.

Por los fundamentos que expondremos se *confirma* la *Sentencia Parcial* apelada.

I

El 12 de mayo de 2021, la parte apelada presentó una *Demanda* sobre desahucio y cobro de dinero.[1] Adujo, en síntesis, que, entre las partes existió una relación contractual de

---

[1] Apéndice del recurso, a las págs. 1-3.

Número Identificador

SEN2025_____

arrendamiento en virtud de un *"Lease Agreement"* (en adelante Contrato de Arrendamiento)[2] y *Escritura de opción de compra*[3], el cual, a la fecha de la presentación de la demanda alegó se encontraba vencido. Manifestó que la parte apelante no ejerció su derecho de opción de compra dentro del plazo requerido en el Contrato. Añadió que la parte incumplió con el pago del canon de arrendamiento correspondiente a las mensualidades posteriores al 14 de febrero de 2021, a pesar de que continuaba ocupando la propiedad. Por lo cual, el apelado solicitó el desahucio de la parte apelante y correspondiente pago del arrendamiento adeudado.

En respuesta, el 18 de junio de 2021, la parte apelante presentó una *Contestación a demanda y reconvención*.[4] En síntesis, negó la mayoría de las alegaciones incoadas en su contra, mientras admitió varias alegaciones relevantes a los documentos y trámites de su relación contractual con la apelada. Entre ellas, admitió la existencia del Contrato de Arrendamiento y la Escritura de Opción de Compra. Negó, entre otras cosas, que la notificación para ejercer la opción hubiese sido ejercida fuera de término y que el contrato de arrendamiento hubiese vencido. Sostuvo que, tanto el Contrato de Arrendamiento como la Escritura de Opción de Compra establecían que el derecho a opción se podía ejercer en cualquier momento antes del culminar el plazo de arrendamiento. Manifestó haber notificado su decisión de hacer uso de su derecho de opción mucho antes de la fecha de vencimiento del Contrato de Arrendamiento y que, por lo tanto, la apelada se encontraba obligada a venderle la propiedad en disputa. Añadió entre sus defensas afirmativas la tácita reconducción, entre otras. En la reconvención presentó como causas de acción un reclamo en daños e incumplimiento intencional

---

[2] Apéndice del recurso, a las págs. 21-39.
[3] *Íd.,* a las págs. 50-62.
[4] *Íd.,* a las págs. 5-20.

del contrato de manera dolosa por parte de la apelada. A tenor, solicitó al foro primario que declara sin lugar el desahucio por la vía sumaria, y ordenara que los procedimientos se continuaran mediante el trámite ordinario. Además, solicitó una compensación en daños, además del pago de costas y honorarios de abogado.

El 19 de octubre de 2021, el foro primario emitió una *Orden*[5] en la cual se declaró *Ha Lugar* la petición de la parte apelante convirtiendo el pleito en uno ordinario y autorizó la reconvención.

Por su parte, el 29 de octubre de 2021, la parte apelada presentó una *Contestación a reconvención y defensas afirmativas.*[6] Arguyó que, según redactadas las cláusulas de ambos documentos suscritos por las partes, y según se desprendía de la intención de los contratantes, la parte apelante no cumplió con las obligaciones en el Contrato y la opción no fue notificada dentro del término establecido para ello. Esbozó que, debido al incumplimiento contractual de la parte apelante de rehusarse a desalojar la propiedad inmueble a la fecha de vencimiento del Contrato, se había visto impedida de regresar a su hogar.

En esa misma fecha, 29 de octubre de 2021, la apelada presentó una *Solicitud de autorización para presentar demanda enmendada.*[7] En su escrito solicitó que se le permitiera enmendar sus alegaciones para incluir otras causas de acción que tenía contra la parte apelante. Junto a la solicitud antes mencionada, acompañó como parte de los anejos, una *Demanda enmendada.*[8] En síntesis, incluyó como causas de acción contra la parte apelante incumplimiento de contrato y enriquecimiento injusto.

---

[5] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 29.
[6] Apéndice del recurso, a las págs. 98-121.
[7] *Íd.,* a las págs. 122-123.
[8] *Íd.,* a las págs. 124-136.

En respuesta, el 24 de noviembre de 2021, la parte apelante presentó su *Contestación a demanda enmendada*.[9] En su alegación responsiva, negó prácticamente todas las alegaciones y consignó ciertas defensas afirmativas.

Así las cosas, el 15 de julio de 2021, la parte apelante presentó una *Moción para el depósito de fondos*.[10] A tales efectos, la parte apelante solicitó al foro primario que aceptara en depósito la cantidad de cuarenta y cinco mil dólares ($45,000.00) correspondientes al alquiler de la propiedad por un año desde la fecha del 15 de febrero de 2021 al 14 de febrero de 2022.

De igual forma, el 20 de mayo de 2022, la parte apelante presentó otra *Moción para el depósito de fondos*.[11] Solicitó al foro primario que le permitiera consignar la suma de cuarenta y tres mil doscientos ochenta y cinco dólares ($43,285.00) correspondientes al alquiler de un año desde la fecha del 15 de febrero de 2022 al 14 de febrero de 2023.

Por su parte, el 13 de junio de 2022, la apelada presentó su *Oposición a moción para el depósito de fondos, y solicitud de orden de pago de canon de arrendamiento*.[12] En síntesis, alegó que la parte apelante realizó dicha consignación con la pretensión de constituir un nuevo periodo de arrendamiento, el cual se encontraba vencido desde el 14 de febrero de 2021. Disputó que la cantidad consignada fue menor al precio del arrendamiento pactado para el periodo de un año.

Para el 14 de marzo de 2023, la parte apelante presentó otra *Moción para el depósito de fondos*.[13] Solicitó al foro primario que le permitiera consignar la suma de cuarenta y cinco mil dólares

---

[9] Apéndice del recurso, a las págs. 173-182.
[10] *Íd.,* a las págs. 94-97.
[11] *Íd.,* a las págs. 183-187.
[12] *Íd.,* a las págs. 188-194.
[13] *Íd.,* a las págs. 195-197.

($45,000.00) correspondientes al alquiler de un año desde la fecha del 15 de febrero de 2023 al 14 de febrero de 2024.

En respuesta, mediante *Orden* notificada el 15 de marzo de 2023, el foro primario autorizó el depósito de fondos.[14]

Un tiempo después, el 5 de mayo de 2023, la apelada presentó una *Solicitud de retiro de dineros consignados*.[15] En la referida solicitud, requirió al foro primario que ordenara el retiro parcial del dinero consignado en el Tribunal por la parte apelante, por la cantidad de noventa y siete mil quinientos dólares ($97,500.00), correspondientes a los cánones mensuales de arrendamiento transcurridos desde la fecha de vencimiento del Contrato y durante los cuales la parte apelante habían ocupado la propiedad.

Por su parte, el 26 de mayo de 2023, la parte apelante presentó una *Moción en cumplimiento de orden sobre "Solicitud de retiro de dineros consignados"*.[16] Manifestó que no se oponían al desembolso de la consignación y que, según propuesto por la parte apelada y aprobado por la parte apelante, se acreditaran las cantidades al final del caso según lo determinara el Tribunal.

En respuesta, mediante *Orden* emitida el 30 de mayo de 2023, y notificada al día siguiente, el foro primario declaró *Ha Lugar* la solicitud de la apelada.[17] En consecuencia, ordenó la emisión de un cheque a nombre de la apelada por la cantidad de $97,500.00, más los intereses acumulados, al amparo de la Ley 69 de 14 de agosto de 1991.[18]

Así las cosas, el 28 de agosto de 2023, ocurrieron dos (2) eventos procesales. Y es que, cada parte en este caso presentó una solicitud de sumaria, posteriormente opuesta por la otra parte. Veamos.

---

[14] Apéndice del recurso, a la pág. 200.
[15] *Íd.,* a las págs. 201-205.
[16] *Íd.,* a las págs. 207-209.
[17] *Íd.,* a la pág. 210.
[18] *Íd.*

En *primer* lugar, la parte apelante presentó una *Moción de sentencia sumaria.*[19]  Solicitó que se dictara sentencia sumaria a su favor por entender que no existía controversia en los hechos. Por ende, arguyó que correspondía al Honorable Tribunal determinar si ejerció su Opción de Compra oportunamente, interpretando el lenguaje del Contrato de Arrendamiento y el derecho aplicable.

En *segundo* lugar, la parte apelada de igual forma presentó su *Moción de sentencia sumaria.*[20] Alegó que las comunicaciones entre las partes y sus acuerdos demuestran claramente y sin lugar a duda que existía un periodo límite para ejercer la opción a compra, el cual no fue ejercido oportunamente por la parte apelante. Solicitó que se dictara sentencia sumaria a su favor, por entender que no existían hechos materiales en controversia. Arguyó que, a su juicio, solo restaba señalar una vista evidenciaria para determinar el monto en daños sufridos como resultado del incumplimiento de contrato.

En reacción a las solicitudes de sentencia sumaria interpuestas, las partes presentaron sus oposiciones el 28 de septiembre de 2025. Veamos.

Por un lado, la parte apelada incoó su *Oposición a moción de sentencia sumaria.*[21] Arguyó que no existían controversias genuinas sobre hechos materiales en cuanto a ninguna de las causas de acción presentadas en el caso de epígrafe. Añadió que la parte apelante se encontraba ocupando la propiedad en cuestión de manera ilegal, y que hubo incumplimiento de contrato de su parte. Por lo que, a su juicio, procedía declarar *Con Lugar* la demanda enmendada por la vía sumaria.

Por otro lado, la parte apelante presentó su *Oposición a moción de sentencia sumaria.*[22] Señaló que existía controversia sobre los

---

[19] Apéndice del recurso, a las págs. 211-271.
[20] *Íd.,* a las págs. 272-304.
[21] *Íd.,* a las págs. 397-406.
[22] *Íd.,* a las págs. 345-396.

hechos esenciales según esbozados en el escrito que impedían resolverlo por la vía sumaria a favor de la apelada. Específicamente, señaló que existía controversia sobre la intención de las partes antes de otorgar el contrato de arrendamiento. Añadió que el contrato fue renovado por disposición de ley, haciendo alusión a la figura de la tácita reconducción. Por lo cual, arguyó que no procedía la solicitud de la apelada.

De ahí, el 28 de diciembre de 2023, notificada el 2 de enero de 2024, el foro primario emitió la *Sentencia Parcial* apelada.[23]

Mediante la *Sentencia Parcial,* el foro *a quo* declaró *Ha Lugar* la solicitud de sentencia sumaria presentada por la parte apelada, y *No Ha Lugar* la solicitud de sentencia sumaria presentada por la parte apelante. Además, dispuso que, una vez adviniera final y firme la *Sentencia Parcial,* procedería a calendarizar una vista para disponer sobre la controversia de alegados daños sufridos por la parte apelada.

Como parte del dictamen, el tribunal de instancia emitió las siguientes ocho (8) determinaciones de hechos:

1. Markovic es la dueña de la Propiedad Del Sol #16, ubicada en el Viejo San Juan.
2. El 15 de febrero de 2020, Markovic y el Matrimonio Meldon Fitzgerald firmaron el "Lease Agreement" (en adelante, "Contrato de Arrendamiento MMF) en el que Markovic le arrendó la Propiedad Del Sol #16 al Matrimonio Meldon Fitzgerald.
3. La duración del Contrato de Arrendamiento MMF era de un año, comenzando el 15 de febrero de 2020 y concluyendo el 14 de febrero de 2021.
4. El Contrato de Arrendamiento MMF incluyó una cláusula sobre opción de compra que lee como sigue:
   4. OPTION TO PURCHASE -
   (a) LESSOR grants LESSEE an option to purchase the Premises (the "Purchase Option") for the sum of Seven Hundred Fifty Thousand Dollars ($750,000.00) (the "Purchase Price").
   (b) The Purchase Option may be exercised by LESSEE at any time during the Lease Term by giving ninety (90) days written notice thereof to the LESSOR, delivered by email to ljubinkamarkovic@hotmail.com.
   (c) LESSOR grants LESSEE intend for the Purchase Option to be filed and recorded in the Registry of the Property of

---

[23] Apéndice del recurso, a las págs. 411-430.

Puerto Rico and, to that end, agree to execute a Deed of Option to Purchase substantially in the form attached hereto as **Exhibit A** within fifteen (15) days of the Effective Date.
(d) Rent payments made by LESSEE under this Lease shall not be credited to the Purchase Price, except that any Rent payment made by LESSEE in advance, covering any period of time after the effective date of the purchase of the Premises by LESSEE, as evidenced by the date of the deed of purchase and sale in connection with the Purchase Option (i.e., any unearned Rent), shall be credited to the Purchase Price.
(e) The Purchase Price includes the sale of the Furnishings (except for the art, which shall continue to be owned by LESSOR), as hereinafter defined.

5. El 9 de julio de 2020, Markovic y el Matrimonio Meldon Fitzgerald otorgaron la Escritura de Opción a Compra, escritura núm. 8, autorizada por el notario público, Jaime Fernando González Suárez, sobre la Propiedad Del Sol #16.

6. En lo pertinente a la opción, la referida escritura pública en su segunda cláusula dispone:
One. Grant of Option; Purchase Price. The Grantor hereby constitutes, gives, conveys and grants to the Grantee an exclusive, first option to purchase (the "Purchase Option") the Property and the
buildings, structures, fixtures, and improvements now and hereafter
built thereon and all appurtenances, rights, privileges and easements benefiting, belonging or pertaining thereto from the date
of execution of this Deed until February fourteen (14), two thousand
twenty-one (2021) (the "Option Period). The Purchase Option is subject to the following terms and conditions.
(a) The purchase price for the Property shall be the amount of Seven
Hundred and Fifty Thousand Dollars ($750,000.00) (the "Purchase Price").
(b) The Purchase Option may be exercised by Grantee at any time during the Option Period by giving ninety (90) days written notice thereof to the Grantor, delivered in person, by electronic mail, or mailed by certified mail, return receipt requested, to the Grantor's address set forth herein (the "Notice").

7. El 10 de diciembre de 2020, el Matrimonio Meldon Fitzgerald le envió a Markovic un correo electrónico dando aviso para ejercer el derecho a opción a compra, según establecido en la Escritura de Opción a Compra, para la Propiedad Del Sol #16.

8. El 10 de diciembre de 2020, Markovic le remitió un correo electrónico al Matrimonio Meldon Fitzgerald en el cual le indicó que no recibió aviso escrito de su intención para ejercer la opción a compra sobre la Propiedad Del Sol #16 dentro del término de noventa días.[24]

En el dictamen apelado, el tribunal de instancia concluyó que no existía controversia en los hechos materiales que impidieran la solución sumaria de la acción. A esos efectos, determinó que el lenguaje contractual que le proveyó al matrimonio un derecho de

---

[24] Apéndice del recurso, a las págs. 418-420.

opción a compra requería que la parte apelante notificara a la parte apelada por correo electrónico el ejercicio de la opción a compra, con noventa (90) días de anterioridad a la fecha de vencimiento del contrato. A juicio del Tribunal, el lenguaje contractual fue claro y, en consecuencia, el correo electrónico de notificación debió ser enviado por la parte apelante a más tardar el día 16 de noviembre de 2020. Empero, no fue hasta el 10 de diciembre de 2020, que el matrimonio, en efecto, envió la comunicación al apelado. Por lo cual, concluyó que no ejercieron su opción a compra, al no cumplir con la notificación requerida contractualmente. Añadió que, dado que la parte apelada comunicó su intención de dar por terminado el contrato de arrendamiento, no procedía reconocerle a la parte apelante una tácita reconducción. En consecuencia, el foro primario declaró *Ha Lugar* la *Moción de sentencia sumaria* presentada por la señora Marckovic y *No Ha Lugar* la *Moción de sentencia sumaria* presentada por la parte apelante.

En desacuerdo, el 1 de febrero de 2024, la parte apelante compareció mediante un recurso de *Apelación* en el cual esbozó la comisión de los siguientes dos (2) errores:

I. Erró el TPI al interpretar la redacción del derecho de la Opción de Compra incluido en el Contrato de Arrendamiento y en la Escritura de Opción de Compra concluyendo que la notificación de ejercicio del derecho tenía que hacerse noventa (90) días antes de culminar el arrendamiento.

II. Erró el TPI al concluir que la notificación de ejercicio del derecho de opción no fue oportuna a pesar de que el Contrato de Arrendamiento se renovó por disposición de ley.

Luego de varios incidentes procesales innecesarios pormenorizar, mediante *Sentencia* emitida el 28 de febrero de 2024, esta Curia desestimó el recurso interpuesto por falta de jurisdicción. Lo anterior, tras juzgar que el mismo fue presentado de forma prematura puesto a que el tribunal de instancia no había fijado en su dictamen parcial el monto de la fianza en apelación ni tampoco

dispuso eximir del pago de esta. Tras la parte apelante haber quedado inconforme con este resultado, acudió al Alto Foro mediante un recurso de *certiorari* en el alfanumérico CC-2024-0273.

Mediante *Opinión* emitida el 8 de octubre de 2025, el Tribunal Supremo de Puerto Rico expidió el auto de *certiorari* y revocó nuestra *Sentencia.* En consecuencia, nos devolvió el caso para que fuese atendido en los méritos. En cumplimiento con lo mandatado por la última instancia judicial, mediante *Resolución* emitida el 29 de octubre de 2025, concedimos a la apelada hasta el 12 de noviembre de 2025, para presentar su alegato en oposición.

El 12 de noviembre de 2025, compareció la parte apelada mediante *Oposición a recurso de apelación.* Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso del título.

II

**A. La Sentencia Sumaria**

El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que, únicamente, se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.[25] El propósito de este mecanismo procesal es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo.[26] A esos efectos, "solamente debe ser dictada una sentencia sumaria en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes".[27] Es decir, para que proceda dictar sentencia por la vía sumaria, es imprescindible que

---

[25] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994).

[26] *García Rivera et al. v. Enríquez*, 153 DPR 323, 337 (2001); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994).

[27] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a las págs. 911-912, citando a *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986) (Cita depurada); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990).

de los documentos que acompañan la solicitud o que obran en el expediente del tribunal no surja controversia legítima sobre hechos materiales del caso, y que, por ende, sólo reste aplicar el derecho.[28]

Ahora bien, a los fines de considerar la moción, se tendrán como ciertos todos los hechos no controvertidos que consten en los documentos y declaraciones juradas ofrecidas por la parte promovente.[29] No obstante, tales documentos deben evaluarse de la forma más favorable para la parte que se opone a la moción.[30]

En cuanto al proceso de revisión de las sentencias sumarias, nuestro Alto Foro ha sido enfático en que el Tribunal de Apelaciones debe:

> (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario;

> (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;

> (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y

> (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[31]

Además, al revisar la determinación del foro primario, respecto a una sentencia sumaria, estamos limitados de dos (2) maneras. *Primero*, solo podemos considerar los documentos que se presentaron ante el foro de primera instancia. Es decir, "las partes no pueden añadir en apelación exhibits, deposiciones o affidávits que no fueron presentados oportunamente en el foro de primera instancia, ni pueden, por primera vez ante el foro apelativo, esbozar

---

[28] *Nissen Holland v. Genthaller*, 172 DPR 503, 511 (2007).
[29] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 DPR 945, 957 (1993).
[30] *Íd.*, a la pág. 957.
[31] *Roldán Flores v. M. Cuebas, et al., supra,* 679. (Cita depurada); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118-119 (2015).

teorías nuevas o esgrimir asuntos nuevos".[32] *Segundo*, solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta.[33] Entiéndase que, al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, ya que dicha tarea le corresponde al foro de primera instancia.[34]

### B. Teoría General de los Contratos

Bajo nuestro crisol doctrinario, "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en [los] que intervenga cualquier género de culpa o negligencia".[35] Particularmente, las obligaciones contractuales tienen fuerza de ley entre las partes y deben cumplirse según lo pactado.[36] Ahora bien, en nuestro ordenamiento jurídico rige el principio de libertad de contratación.[37] De manera que, los contratantes tienen la facultad de establecer los pactos, condiciones y cláusulas que le sean más convenientes, siempre y cuando no sean contrarios a las leyes, a la moral y al orden público.[38]

Para que se considere que existe un contrato se requiere que concurran tres (3) requisitos: (i) consentimiento de los contratantes; (ii) un objeto cierto que sea materia del contrato, y (iii) la causa de la obligación que se establezca.[39] Una vez perfeccionado un contrato, las partes que lo suscriben están sujetas a hacer valer el cumplimiento de lo pactado y a todas las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley.[40]

---

[32] *Meléndez González et al. v. M. Cuebas*, *supra*, a la pág. 114. (Cita depurada).
[33] *Íd.*, a la pág. 115.
[34] *Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004).
[35] Artículo 1042 del Código Civil de Puerto Rico, Edición de 1930 (Código Civil de 1930), 31 LPRA sec. 2992. El referido código fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado, por ser la ley vigente y aplicable a la controversia que nos ocupa.
[36] Artículo 1044 del Código Civil de 1930, *supra*, 31 LPRA sec. 2994 (derogado).
[37] *Oriental Financial v. Nieves*, 172 DPR 462, 470 (2007).
[38] Artículo 1207 del Código Civil de 1930, *supra*, 31 LPRA sec. 3372 (derogado); *Blanco Matos v. Colón Mulero*, 200 DPR 398, 408 (2018).
[39] Artículo 1213 del Código Civil de 1930, *supra* 31 LPRA sec. 3391 (derogado).
[40] Artículo 1210 del Código Civil de 1930, *supra*, 31 LPRA sec. 3375 (derogado).

KLAN202400092                                                          13

Entiéndase, que el principio de la obligatoriedad de los contratos está estrechamente vinculado con la buena fe de los contratantes.[41]

Desde el momento en que las partes perfeccionan con el mero consentimiento un contrato, cada una viene obligada no solo a cumplir con lo expresamente pactado, sino también con las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley.[42] Por consiguiente, la validez y el cumplimiento de los contratos no puede dejarse al arbitrio de una de las partes.[43]

Como corolario de lo antes expuesto, el Código Civil de 1930, hoy derogado, dispone en su Artículo 1233 que "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas".[44] Asimismo, establece que "[s]i las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquellas".[45] En ese aspecto, cuando los términos de un contrato, sus condiciones y exclusiones, son claros y específicos, no dando margen a ambigüedades u otras interpretaciones, así deben aplicarse.[46] En adición, los tribunales se deben limitar a interpretar los contratos en los casos en los que esto sea estrictamente necesario. [47] Asi, pues, si un contrato es claro, presupone concordar la letra contractual con la intención de las partes.[48]

Cónsono con lo anterior, es harto conocido que en nuestra jurisdicción impera la teoría de la subjetividad en la interpretación de los contratos, la cual implica el indagar cuál fue la voluntad real de las partes con el propósito de que esta prevalezca.[49] La intención

---

[41] *Unysis v. Ramallo Brothers*, 128 DPR 842, 852 (1991).
[42] Artículo 1210 del Código Civil de 1930, *supra* (derogado); *Unysis v. Ramallo Brothers*, supra, a la pág. 852.
[43] Artículo 1208 del Código Civil de 1930, *supra,* 31 LPRA sec. 3373 (derogado); *Unysis v. Ramallo Brothers*, supra, a la pág. 852.
[44] Artículo 1233 del Código de 1930, *supra,* 31 LPRA sec. 3471 (derogado).
[45] *Íd.*
[46] *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 212 (2006); *Unysis v. Ramallo Brothers*, supra, a la pág. 852.
[47] *Macial Burgos v. Tomé*, 144 DPR 522, 537 (1997).
[48] *Íd.*
[49] *Macial Burgos v. Tomé,* supra, a la pág. 537.

de las partes será el criterio fundamental para fijar el alcance de las obligaciones contractuales.[50] Al momento de analizar la intención de los contratantes, los tribunales deben atender, no solo los actos anteriores, coetáneos y posteriores al contrato, sino también las circunstancias indicativas de la voluntad de las partes.[51] La interpretación final debe ser cónsona con el principio de la buena fe y no llevar a resultados incorrectos, absurdos e injustos para las partes.[52]

Es menester apuntalar que, si se quebrantan las obligaciones pactadas mediante un contrato, la parte afectada podrá incoar una acción por incumplimiento contractual.[53] Mediante esta acción *ex contractu,* se podrá solicitar el resarcimiento de los daños que emanen del quebrantamiento de los deberes convenidos.[54] Empero, para que proceda esta acción, debe existir un pacto el cual haya generado tanto una obligación, así como una expectativa en virtud de la cual actuaron las partes.[55] Además, será necesario que la parte afectada demuestre la existencia de un nexo causal entre el incumplimiento contractual y el daño reclamado.[56] Ahora bien, la acción por incumplimiento contractual debe presentarte antes de que expire el término prescriptivo de quince (15) años.[57] De lo contrario, la parte afectada por incumplimiento contractual estará impedida de solicitar el resarcimiento de los daños.

### C. El Contrato de Arrendamiento y la Tácita Reconducción

El Código Civil de Puerto Rico de 1930, hoy derogado, en su Artículo 1433, establece, en lo que respecta a los contratos de arrendamiento, que éstos pueden ser de cosas, obras o servicios.[58]

---

[50] *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 DPR 64, 69 (1983).
[51] Artículo 1234 del Código Civil de 1930, 31 LPRA sec. 3472 (derogado); *Blas v. Hosp. Guadalupe*, 167 DPR 439, 451 (2006).
[52] *Guadalupe Solis v. González Durieux*, 172 DPR 676, 684-685 (2007).
[53] *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 998 (2024).
[54] *Soc. de Gananciales v. Vélez & Asoc*, 145 DPR 508, 521 (1998).
[55] *Álvarez v. Rivera*, 165 DPR 1, 18 (2005).
[56] *Cruz Cruz v. Casa Bella Corp.*, supra, a la pág. 999.
[57] *Ramos Lozada v. Orientalist Rattan Furniture Inc*, 130 DPR 712, 722 (1992).
[58] Artículo 1432 del Código Civil de 1930, *supra*, 31 LPRA sec. 4011 (derogado).

Ahora bien, cuando se pacta un contrato de arrendamiento de una cosa, una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto.[59] Por otro lado, en su Artículo 1455, establece que, "[s]i el arrendamiento se ha hecho por tiempo determinado, concluye el día prefijado sin necesidad de requerimiento".[60]

En lo pertinente al caso de marras, respecto a como opera a la doctrina de la tácita reconducción en contratos de arrendamiento, el Artículo 1335 del Código Civil de Puerto Rico del 2020 (Código Civil de 2020),[61] dispone que "[l]legado el plazo convenido para el arrendamiento, este continúa en los mismos términos contratados hasta que cualquiera de las partes notifique a la otra su voluntad de resolver el contrato".[62] Entiéndase que, para que opere la tácita reconducción, ninguna de las partes puede haber expresado su intención de dar por terminado el contrato de arrendamiento.[63] Por esta razón, "se entiende que el arrendado consintió tácitamente a la reconducción si no hace requerimiento o manifestación alguna para que el arrendatario cese en el disfrute de la cosa".[64] No obstante, lo anterior, el ánimo del arrendatario de reconducir debe quedar claro.[65] Este ánimo quedará demostrado si el arrendatario se queda disfrutando de la cosa arrendada luego de que venza el contrato.[66] Ahora bien, conforme adelantamos, una vez, una de las partes exprese que no desea continuar en la referida relación jurídica, el contrato de arrendamiento se entenderá resuelto.[67]

---

[59] Artículo 1433 del Código Civil de 1930, *supra*, 31 LPRA sec. 4012 (derogado).
[60] *Íd.*, Artículo 1455, 31 LPRA sec. 4062.
[61] En relación con la tácita reconducción, se analizará al amparo del Código Civil de 2020, puesto que la vigencia del Contrato de Arrendamiento concluyó el 14 de febrero de 2021. Por lo que, de operar esta figura, sería bajo la vigencia del nuevo Código.
[62] Artículo 1335 del Código Civil de 2020, Ley Núm. 55-2020, 31 LPRA sec. 10105.
[63] *A la Orden Shopping, S.E. v. AEE,* 213 DPR 546, 567 (2024); *SLG Ortiz-Mateo v. ELA,* 211 DPR 772, 797-798 (2023), citando a *Vicar Builders v ELA et al.,* 192 DPR 256, 261 (2015).
[64] *Vicar Builders v ELA et al.,* supra, a la pág. 262.
[65] *Íd.*
[66] *Vicar Builders v ELA et al.,* supra, a la pág. 262.
[67] Véase, Artículo 1335 del Código Civil de 2020, *supra.*

**D. El contrato de Opción a Compra**

En lo que al recurso ante nos respecta, conviene mencionar que, por un tiempo, el contrato de opción a compra se regía por vía de jurisprudencia, toda vez que el derogado Código Civil de 1930 no contenía disposiciones al respecto. No obstante, lo anterior, el nuevo Código Civil de 2020 recogió la normativa desarrollada a través de la jurisprudencia con relación a este tipo de contratos. Por ello, pese a que en el presente caso aplica el Código de 1930, debido a que el contrato entre las partes del título se efectuó en febrero de 2020, haremos referencia tanto a la jurisprudencia interpretativa como al Código Civil de 2020, para una mejor compresión del derecho aplicable.

Establecido lo anterior, puntualizamos que el Código Civil de 2020 define este tipo de contrato como "el derecho que faculta a su titular para que decida durante un plazo determinado, mediante la manifestación de su aceptación, el perfeccionamiento del contrato de compraventa que ha sido ya acordado en todos sus aspectos fundamentales y secundarios y a cuyo cumplimiento se mantiene comprometido el concedente durante el plazo prefijado".[68] En otras palabras, es "un contrato consensual, mediante el cual una parte (promitente) le concede a otra parte (optante) el derecho exclusivo a decidir de manera unilateral si comprará determinado bien inmueble que le pertenece al promitente".[69] Es menester enfatizar que el contrato de opción, por ser de naturaleza transitoria, puede ser principal o un pacto accesorio a otro, como, por ejemplo, un contrato de compraventa, sociedad, financiamiento o arrendamiento de cosas y servicios.[70]

---

[68] Artículo 1029 del Código Civil de 2020, *supra*, 31 LPRA sec. 8821.
[69] *S.L.G. Irizarry v S.L.G. García,* 155 DPR 713, 722 (2001).
[70] *Mayagüez Hilton Corp. v. Betancourt,* 156 DPR 234, 250 (2002).

Los elementos esenciales de este tipo de contrato son los siguientes: (1) la facultad del optante de decidir unilateralmente si celebrará el contrato principal sin ninguna obligación de su parte; (2) que la concesión sea exclusiva; (3) un plazo para ejercitar la opción y, por último, (4) la voluntad del optante como única condición.[71]

Por otro lado, el derecho de opción tiene algunos requisitos para su título de constitución.[72] Primeramente, debe contener las estipulaciones y el domicilio a efectos de las notificaciones preceptivas y demás pactos que el constituyente o los constituyentes tengan por conveniente.[73] Asimismo, debe contener: (i) el plazo de duración del derecho y, si procede, el plazo para su ejercicio; (ii) en su caso, la voluntad del constituyente o de los constituyentes de configurar el derecho con carácter real; (iii) el precio o contraprestación para la adquisición del bien o los criterios para su fijación, cuando se trate de un derecho de opción a una adquisición onerosa, indicando el precio estipulado para su adquisición; (iv) cuando se prevean cláusulas de estabilización, debe contener criterios objetivos y el precio debe poder fijarse con una simple operación aritmética, y (v) la prima pactada para su constitución, cuando el derecho se constituye a título oneroso, indicando el precio convenido.[74] Cumplidos los requisitos antes mencionados, el de opción de compra se puede inscribir, siempre cuando conste en escritura pública .[75]

Precisa acentuar que será indispensable que el optante notifique al optatario su voluntad de perfeccionar el contrato aceptado.[76] Ello, puesto a que, si se deja transcurrir el plazo

---

[71] *SLG Irizarry v. SLG García*, supra, a la pág. 722.
[72] Artículo 1030 del Código Civil de 2020, *supra*, 31 LPRA sec. 8822.
[73] *Íd.*
[74] *Íd.*
[75] *Íd.*
[76] *SLG Irizarry v. SLG García*, supra, a la pág. 722.

concedido para optar, sin hacer ninguna manifestación o haciendo alguna que tenga la eficacia de una renuncia del derecho, el derecho de opción quedará extinguido.[77]

### III

En el recurso de marras, la primera instancia judicial tuvo ante su consideración dos (2) solicitudes de sentencia sumaria con sus correspondientes oposiciones. Según constatamos, luego de evaluar ambas solicitudes, el tribunal apelado resolvió conceder el remedio solicitado por la parte apelada mediante un dictamen parcial y disponer que era necesario celebrar una vista para determinar los daños alegados por la parte apelada.

Es de ver que la parte apelante ha comparecido ante nos tras su inconformidad con el resultado obtenido y nos plantea que el foro *a quo* incidió al concluir que la notificación de la parte apelante a la parte apelada para ejercer el derecho de opción a compra tenía que hacerse noventa (90) días antes de que concluyera el contrato de arrendamiento. Por otro lado, sostiene que el tribunal de instancia se equivocó al concluir que la notificación del ejercicio del derecho de opción a compra no fue oportuna, aduciendo que el contrato de arrendamiento se renovó por disposición de ley.

Precisa iniciar esta discusión, abordando ambas posiciones en cuanto a las solicitudes de sentencia sumaria y sus correspondientes oposiciones. En apretado resumen, la parte apelante arguyó que no existía controversia sobre hechos esenciales que impidiera la adjudicación de la acción mediante el mecanismo sumario y que, conforme al lenguaje del Contrato de Arrendamiento, procedía determinar que la parte apelante ejerció oportunamente su derecho a la opción a compra. En virtud de ello, sostuvo que

---

[77] *SLG Irizarry v. SLG García*, supra, a la pág. 722.

correspondía imponer a la parte apelada la obligación de otorgar la escritura de compraventa sobre la propiedad objeto del litigio.

Por su parte, en el petitorio de la apelada, solicitó que se dictara sentencia sumaria por entender que no existía controversia en los hechos materiales. Añadió que el lenguaje del contrato de arrendamiento evidenciaba que, para ejercer el derecho de opción a compra, la parte apelante debió enviar una notificación al menos noventa (90) días previo a la conclusión del antedicho contrato.

Posteriormente en su oposición, la parte apelada sostuvo que la postura asumida por la parte apelante sobre las comunicaciones previas al contrato de arrendamiento era errada, por lo cual, no procedía dictar sentencia sumaria según esbozado por la parte apelante.

No obstante, la parte apelante alegó en su oposición que existía controversia sobre la intención de las partes antes de otorgar el contrato de arrendamiento, por lo cual, no procedía dictar sentencia sumaria según solicitado por la parte apelada.

Evaluados sendos escritos, el tribunal apelado declaró ha lugar la solicitud de la apelada y no ha lugar la de la parte apelante. Es menester subrayar que, cuando nos encontramos ante determinaciones emitidas por el foro primario en torno a solicitudes de sentencia sumaria, el Tribunal de Apelaciones debe revisar *de novo* que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil.[78] Así que, luego de haber revisado con detenimiento la totalidad de los autos en el caso del título, razonamos que no existe controversia de hechos materiales que limiten la adjudicación de la acción de epígrafe, por la vía sumaria. Puntualizamos que, ambas partes, al instar sus solicitudes de

---

[78] *Meléndez Gonzáles v M. Cuebas,* 193 DPR 100, 118 (2015).

sentencia sumaria y sus respectivas oposiciones, cumplieron sustancialmente con los requisitos exigidos por la Regla 36 de Procedimiento Civil. Sin embargo, la parte apelante no logró controvertir lo alegado y fundamentado por la parte apelada en su solicitud de sentencia sumaria.

A la luz de todo lo anterior, nos corresponde pues, examinar la procedencia de los errores planteados por la parte apelante. En el recurso ante nos, se esgrimieron dos (2) errores presuntamente cometidos por el foro primario. Veamos.

En primer lugar, la parte apelante nos convida a concluir que el foro de instancia incidió al momento de interpretar la redacción del derecho de opción a compra incluido en el contrato de arrendamiento y en la escritura de opción a compra, tras razonar que el ejercicio del derecho de opción a compra debía ejercerse con noventa (90) días de anticipación a la culminación del arrendamiento. No le asiste la razón. Elaboramos.

Precisa puntualizar que, para determinar si en efecto erró el foro primario, debemos analizar las cláusulas objeto de la controversia. Según se desprende del expediente ante nos, al otorgar el contrato de arrendamiento, las partes incorporaron la siguiente cláusula:

> 4. OPTION TO PURCHASE –
> (a) LESSOR grants LESSEE an option to purchase the Premises (the "Purchase Option") for the sum of Seven Hundred Fifty Thousand Dollars ($750,000.00) (the "Purchase Price").
>
> (b) The Purchase Option may be exercised by LESSEE at any time during the Lease Term by giving ninety (90) days written notice thereof to the LESSOR, delivered by email to ljubinkamarkovic@hotmail.com
>
> (c) LESSOR grants LESSEE intend for the Purchase Option to be filed and recorded in the Registry of the Property of Puerto Rico and, to that end, agree to execute a Deed of Option to Purchase substantially in the form attached hereto as Exhibit A within fifteen (15) days of the Effective Date.

> (d) Rent payments made by LESSEE under this Lease shall not be credited to the Purchase Price, except that any Rent payment made by LESSEE in advance, covering any period of time after the effective date of the purchase of the Premises by LESSEE, as evidenced by the date of the deed of purchase and sale in connection with the Purchase Option (i.e., any unearned Rent), shall be credited to the Purchase Price.
>
> (e) The Purchase Price includes the sale of the Furnishings (except for the art, which shall continue to be owned by LESSOR), as hereinafter defined.[79]

Sobre este particular, la escritura de opción a compra establece lo siguiente:

> One.  Grant to Option: Purchase Price: The Grantor hereby constitutes, gives, conveys and grants to the Grantee an exclusive, first option to purchase (the "Purchase Option") the Property and the buildings, structures, fixtures, and improvements now and hereafter built thereon and all appurtenances, rights, privileges and easements benefiting, belonging or pertaining thereto from the date of execution of this Deed until February fourteen (14), two thousand twenty-one (2021) (the "Option Period"). The Purchase Option is subjects to the following terms and conditions:
>
> (a) The purchase price for the Property shall be the amount of Seven Hundred and Fifty Thousand Dollars ($750,000.00) (the "Purchase Price").
>
> (b) The Purchase Option may be exercised by Grantee at any time during the Option Period by giving ninety (90) days written notice thereof to the Grantor, delivered in person, by electronic mail, or mailed by certified mail, return receipt requested, to the Grantor´s address set forth herein (the "Notice").
>
> (c) The Notice shall set a date and time to close on the purchase and sale of the Property (the "Closing").[80]

Luego de una lectura cuidadosa de ambos documentos, podemos observar que no existen diferencias sustanciales en cuanto a lo establecido en el contenido de ambos escritos.

---

[79] SUMAC TPI, a la Entrada Núm. 109, anejo 1.
[80] *Íd.,* anejo 2.

De un lado, el contrato de arrendamiento en su inciso 4(b), hace énfasis en el "Lease Term", o en otras palabras "término de arrendamiento", como requisito para hacer la notificación para ejercer la opción a compra. Conforme surge del mismo contrato, en su cláusula 1, se define el mencionado término como sigue:

> 1.LEASE TERM - The term of this lease is for one (1) year, commencing on February 15, 2020 and terminating on February 14, 2021 (the "Lease Term"). Provided that the Lease Term may terminate earlier on the date of the purchase and sale, if LESSEE exercises the Purchase Option, as defined hereinafter.[81]

De otro lado, la escritura de opción a compra establece un "Option Period", o en otras palabras "periodo de opción", de igual forma como requisito para ejercer la notificación de opción a compra. Dicho periodo comprende "from the date of execution of this Deed until February fourteen (14), two thousand twenty-one (2021) (the "Option Period")."

En cuanto al requisito de notificación, ambos documentos establecieron un requisito de noventa (90) días de notificación por escrito durante el "Lease Term" y el "Option Period", venciendo ambos periodos el 14 de febrero de 2021. Por lo cual, el ejercicio de la opción estaba condicionado a que dicha notificación se realizara dentro de noventa (90) días anteriores a vencer el término del arrendamiento, es decir, anteriores al 14 de febrero de 2021.

Nuestro ordenamiento nos exige que "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas."[82] Por otro lado, la jurisprudencia ha establecido que la intención de las partes será el criterio fundamental para fijar el alcance de las obligaciones contractuales.[83]

---

[81] SUMAC TPI, a la Entrada Núm. 109, anejo 1.
[82] Artículo 1233 del Código de 1930, *supra,* 31 LPRA sec. 3471 (derogado).
[83] *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 DPR 64, 69 (1983).

Del expediente surge que, la parte apelada, mediante comunicación por correo electrónico enviada a la parte apelante el día 30 de enero de 2020, hace la siguiente salvedad sobre el término de noventa (90) días, y manifestó que "[d]ecision will be made no later than 90 days before the end of this lease."[84] Del expediente no surge que la parte apelante presentara oposición a dicha comunicación, o a la intención de establecer dicho periodo como requisito. Por consiguiente, según surge de ambos documentos y de la intención de las partes, la parte apelada debió notificar su ejercicio a la opción a compra noventa (90) días previo al vencimiento del contrato de arrendamiento, es decir, previo al 16 de noviembre de 2020. De modo que, es correcto concluir que la parte apelante no ejerció la notificación de la opción a compra oportunamente.

Pasemos al segundo error esgrimido. Mediante este señalamiento de error, la parte apelante nos invita a concluir que el tribunal de instancia incidió tras concluir que la notificación del ejercicio del derecho de opción no fue oportuna bajo el entendido de que el contrato de arrendamiento se renovó por disposición de ley. Para sostener dicho planteamiento, la parte apelante hace alusión a la doctrina de la tácita reconducción. Resulta improcedente su alegación sobre este particular. Abundamos.

La doctrina de la tácita reconducción en contratos de arrendamiento, el Artículo 1335 del Código Civil de Puerto Rico del 2020 (Código Civil de 2020),[85] dispone que "[l]legado el plazo convenido para el arrendamiento, este continúa en los mismos términos contratados hasta que cualquiera de las partes notifique a la otra su voluntad de resolver el contrato." Entiéndase que, para que opere la tácita reconducción, ninguna de las partes puede haber

---

[84]SUMAC TPI, a la Entrada Núm. 109, anejo 4.
[85] En relación con la tácita reconducción, se analizará al amparo del Código Civil de 2020, puesto que la vigencia del Contrato de Arrendamiento concluyó el 14 de febrero de 2021. Por lo que, de operar esta figura, sería bajo la vigencia del nuevo Código.

expresado su intención de dar por terminado el contrato de arrendamiento.[86]

En línea de lo anterior, y a la luz del expediente, debemos analizar si en efecto la doctrina de la tácita reconducción tuvo el efecto de extender el contrato de arrendamiento. Abundamos.

El 10 de diciembre de 2020, ocurrieron dos (2) eventos entre las partes. En *primer lugar*, la parte apelante le envió un correo electrónico a la parte apelada notificando que ejercerían la opción conforme a la escritura de opción a compra.[87]

En *segundo lugar*, la apelada envió un correo electrónico a la parte apelante en el cual indicó no haber recibido escrito sobre su intención de ejercer la opción en el término de noventa (90) días, por lo cual, no vendería la propiedad. Además, esbozó que la parte apelante tenía la libertad de terminar el término del arrendamiento conforme al contrato de arrendamiento.[88] Es decir, la apelada fue clara en su comunicación reiterando que el periodo de arrendamiento podía completarse según pautado hasta la fecha del 14 de febrero de 2021. No surge de la comunicación que la parte apelada le estuviese extendiendo dicho periodo.

Tengamos presente, además, que, el 14 de febrero de 2021, fecha en la cual culminó el contrato de arrendamiento, la parte apelante presentó un *Verified Complaint* [89], o Demanda, contra la parte apelada en el foro federal. En dicha acción, la apelante alegó, entre otras cosas, incumplimiento de contrato de la parte apelada. Posteriormente, el 12 de marzo de 2021, la parte apelante presentó en dicho foro un "Motion for Deposit of Funds"[90], o moción para consignación de fondos, depositando en el foro federal un pago de

---

[86] *A la Orden Shopping, S.E. v. AEE,* 213 DPR 546, 567 (2024); *SLG Ortiz-Mateo v. ELA,* 211 DPR 772, 797-798 (2023), citando a *Vicar Builders v ELA et al.,* 192 DPR 256, 261 (2015).
[87] SUMAC TPI, a la Entrada Núm. 108, anejo 6.
[88] *Íd.,* a la Entrada Núm. 109, anejo 7.
[89] *Íd.,* a la Entrada Núm. 108, Anejo 12.
[90] *Íd.*, Anejo 13.

$45,000, con el propósito de pagar el canon anual de arrendamiento establecido en el contrato por un nuevo término.

El 11 de junio de 2021, posterior a que los apelantes retiraran la demanda del foro federal, estos presentaron un "Motion for the Return of Deposited Funds",[91] o moción para retirar los fondos consignados.

Conforme se desprende del contrato de arrendamiento, la fecha de pago del canon de arrendamiento es a la fecha de efectividad del contrato. Según surge del documento, la fecha de efectividad se refiere a la fecha de comienzo del contrato. En el párrafo introductorio del contrato se estableció que "[t]his lease agreement (this "Lease") dates as of February 15, 2020 (the "Effective Date")". Complementario a ello, en su cláusula 2 estableció que:

> 2. RENT: The total rent for the Lease shall be Forty-Five Thousand Dollars ($45,000) (the "Rent"). LESSEE shall pay the Rent on or prior to the Effective Date.[92]

Nótese que, al mes de junio de 2021, la apelada no había recibido pago del canon de arrendamiento de la propiedad. Si la apelante entendía que el contrato de arrendamiento se extendería en los mismos términos del contrato original, el pago del canon anual debía ser pagado a la parte apelada en la fecha del 15 de febrero de 2021. Adicional, la apelada no hizo ninguna gestión para retirar los fondos consignados, lo que revela que no existía el ánimo de continuar el arrendamiento en los mismos términos.

Por último, el contrato de arrendamiento contiene una cláusula que establece en qué términos se podía extender el contrato. En su cláusula 12 se establece como requisito lo siguiente:

> 12. SIGNS - LESSEE shall advise if LESSEE wants to renew the Lease sixty (60) days before the expiration of Lease Term. If the LESSEE decides not to renew this Lease, LESSOR may post "FOR SALE" or "FOR RENT" signs on the

---

[91] SUMAC TPI, a la Entrada Núm. 108, Anejo 17.
[92] *Íd.,* a la Entrada Núm. 109, Anejo 1.

> Premises. LESSEE agrees to make the Premises available to LESSOR so it may be shown to third parties at reasonable times with prior notice to and in coordination with LESSEE. LESSOR shall not market until sixty (60) days before the expiration of Lease Term.[93]

En otras palabras, para que se renovara dicho contrato, el apelante tenía que notificar, con sesenta (60) días de antelación al vencimiento del contrato, su deseo de extender el mismo. No surge del expediente que dicha notificación fuese realizada.

A fin de entender la naturaleza y el alcance de la relación contractual que existió entre las partes, debemos analizar las cláusulas contractuales como un todo de forma integral. Así lo prescribe nuestro ordenamiento, específicamente en el Artículo 1237 del Código Civil de 1930. El mencionado artículo dispone que "[l]as cláusulas de los contratos deberán interpretarse las unas por las otras, atribuyendo a las dudosas el sentido que resulte del conjunto de todas."[94] El contrato no solo delimitó la fecha de vigencia del arrendamiento, sino que pautó requisitos específicos para la extensión de este contrato. Requisitos cuya observancia fue omitida por la parte apelante.

Por las razones expuestas, entendemos que hay evidencia suficiente para considerar que la apelada, en reiterados actos demostró su deseo de recuperar la propiedad y su negación a extender el contrato de arrendamiento. Por lo cual, concluimos que no se configuró la tácita reconducción.

Puntualizamos que, el Código Civil de 1930 estableció que "[s]i el arrendamiento se ha hecho por tiempo determinado, concluye el día prefijado sin necesidad de requerimiento".[95] La fecha de terminación del contrato era al 14 de febrero de 2021. Por tanto, la vigencia de la relación contractual finalizó.

---

[93] SUMAC TPI, la Entrada Núm. 109, Anejo 1.
[94] Artículo 1237 del Código Civil de 1930, 31 LPRA sec. 3475 (derogado).
[95] Artículo 1455 del Código Civil de 1930, 31 LPRA sec. 4062 (derogado).

Dicho todo lo anterior, y luego de haber estudiado minuciosamente la totalidad de los autos ante nuestra consideración, concluimos que los errores esgrimidos por la parte apelante no fueron cometidos, por lo que procede confirmar la *Sentencia Parcial* apelada y devolver el caso al foro de instancia para la continuación de los procedimientos.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones